*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FRANCESCA THOMAS,

      Plaintiff-Appellant,

v

CITY OF WARREN,

      Defendant,

and

KANE REAL ESTATE INVESTMENTS 2 LLC,

      Defendant-Appellee.

UNPUBLISHED
February 9, 2023

No. 361529
Macomb Circuit Court
LC No. 2020-003316-NO

Before: M. J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Francesca Thomas, appeals as of right the trial court order granting defendant, Kane Real Estate Investments 2 LLC, summary disposition under MCR 2.116(C)(10). Because there are genuine issues of material fact with regard to whether the hazardous condition on Kane Real Estate's property was open and obvious, we reverse.

## I. BASIC FACTS

In June 2020, Thomas visited the home of her longtime friend, Arkeshia Barnes.[1] Barnes was renting the premises from Kane Real Estate Investments 2, LLC. When she arrived, Thomas

---

[1] There is some discrepancy as to the dates in question. Thomas testified that she arrived on June 20, 2020, at approximately 8:00 p.m. when it was light out, and that she left at midnight. Based on Thomas's testimony, it would seem that she left the home on June 21, 2020; however, Barnes testified that after Thomas left Thomas texted her a photograph of her injured toe and that the time stamp for the text was 12:38 a.m. on June 20, 2020. Therefore, it seems likely that Thomas arrived on June 19, 2020, and that she was injured on June 20, 2020, as she was leaving Barnes' residence.

-1-

parked on the street and walked across the grass to reach Barnes' residence. She left Barnes' residence at approximately midnight. Rather than traverse the grass in the dark, Thomas walked down Barnes' paved driveway and, as she reached the sidewalk, she stubbed her left "big toe" on a raised section of pavement. The record reflects that the driveway was approximately 2" lower than the sidewalk. Thomas agreed that the vertical height differential—also referred to as a "lip"—was "clear and obvious" in daylight, but she testified that she had been unable to see it before or after she stubbed her toe because it was too dark.

On September 18, 2020, Thomas filed suit against Kane Real Estate Investments 2, LLC and against the City of Warren. The claim against the City was resolved. Subsequently, Kane Real Estate Investments 2, LLC moved for partial summary disposition on Thomas's claims for violation of MCL 554.139(1), gross negligence and willful and wanton misconduct, and nuisance. The court granted that motion.

Kane Real Estate Investments 2, LLC then moved for summary disposition on Thomas's premises liability claim, arguing that the claim should be dismissed because the allegedly hazardous condition was open and obvious and lacked any special aspects. In support, Kane Real Estate Investments 2, LLC highlighted testimony from witnesses who stated that they could see the height differential if they looked for it and could avoid it by simply stepping over it. In response, Thomas maintained that the condition could be seen in daylight, but that it could not be seen in the dark. She argued that because it was dark and the area where she injured herself was inadequately lit, there was a question of fact with regard to whether the hazard was open and obvious. Following oral argument, the trial court granted Kane Real Estate Investments 2, LLC's second motion for summary disposition under MCR 2.116(C)(10).

## II. SUMMARY DISPOSITION

Thomas argues that the trial court erred by granting summary disposition to Kane Real Estate Investments 2, LLC. A trial court's decision to grant a motion for summary disposition is reviewed de novo. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). On a de-novo review, the issue is reviewed independently, with no deference given to the lower court. *Bowman v Walker*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355561); slip op at 2. When reviewing a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). The motion "may only be granted when there is no genuine issue of material fact." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks, citation, and alteration omitted). "It is well settled that the circuit court may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition." *Patrick*, 322 Mich App at 605 (quotation marks, citation, and alteration omitted). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Id*.

## B. ANALYSIS

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 693; 822 NW2d 254 (2012) (quotation marks and citation omitted). "[A] premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). That duty does not, however, extend to a hazardous condition that is open and obvious, unless "special aspects of that condition make even an open and obvious risk unreasonably dangerous . . . ." *Id.* at 516-517. "The test to determine if a danger is open and obvious is whether 'an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002), quoting *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 475; 499 NW2d 379 (1993). "This is an *objective standard*, calling for an examination of the objective nature of the condition of the premises at issue." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012) (quotation marks and citation omitted).

Thomas argues that the 2-inch height vertical differential was not discoverable upon casual inspection at the time that she encountered it. Specifically, in her deposition, she testified that as she was leaving Barnes' residence she could see the driveway and the cement; however, she could not see the 2-inch lip because it was too dark. Thomas presented evidence that, at the time of the incident, she was paying attention to where she was walking; she described walking "straight" down the driveway and noted that she was "looking down the driveway" while she walked. Finally, Thomas stated that there is not a streetlight near the location where she was injured, nor was there other lighting in the area. Although there is evidence that there was a streetlight on the left side of the house and that there were garden lights around the shrubs on the property, there is no testimony or other documentary evidence indicating that the light illuminated the area where Thomas stumbled. Having considered the evidence regarding the darkness, the lack of adequate lighting, and the affect of both on the visibility of the 2-inch lip before and after Thomas stubbed her toe, we conclude that there is a genuine question of material fact with regard to whether the allegedly hazardous condition was open and obvious at the time of the incident. See *Abke v Vandenberg*, 239 Mich App 359, 362; 608 NW2d 73 (2000) (determining that whether an alleged hazard is open and obvious is affected by the lighting conditions in the area and that a motion for directed verdict or judgment notwithstanding the verdict is inappropriate if there are questions of fact regarding whether the area where the plaintiff fell was dark or whether it was adequately lit). See also *Knight v Gulf & Western Props, Inc*, 196 Mich App 119, 127-128; 492 NW2d 761 (1992) (stating that the lack of adequate lighting rendered a danger that might otherwise have been open and obvious a hidden danger for which the plaintiff was neither aware of nor had reason to anticipate).[2]

---

[2] Kane Real Estate Investments 2, LLC contends that *Abke* and *Knight* are factually distinguishable because the conditions encountered in those cases were more dangerous than the mere 2-inch lip

-3-

Kane Real Estate Investments 2, LLC had not directed this Court to any evidence refuting Thomas's testimony that it was dark, her evidence that the area was not adequately lit, and that she could not see the 2-inch lip before or after her injury because it was too dark. Instead, Kane Real Estate Investments 2, LLC, points to Thomas's testimony that she could see the sidewalk and the cement. The ability to see general features of the area, such as the driveway and the cement, however, does not mean that every detail of the driveway and the cement was apparent in the dark.

Next, Kane Real Estate Investments 2, LLC directs this Court to testimony that a City of Warren engineering technician testified that he examined the area where Thomas stumbled and that, in his opinion, the 2-inch lip was "readily observable" and "obvious to see." However, the engineer also testified that he did have an opinion as to whether the lip would be visible around midnight because he did not know if there was public lighting or house lighting. He added that the appropriateness of the nearby street lighting was not part of his examination. Thus, the engineer's testimony does not allow for a reasonable inference that the lighting conditions were adequate or that the allegedly hazardous condition would have been visible upon casual inspection at night. Similarly, Kane Real Estate Investments 2, LLC points out that both Timothy Kane and Julie Kane, the property managers, testified that they had no difficulty seeing the lip when they were at the property. However, there is nothing on the record indicating that either Timothy or Julie Kane could readily observe the lip when it was dark outside. Thus, like the engineer's testimony, their testimony creates no factual question with regard to whether the condition would be visible upon casual inspection at night and whether the lighting conditions in the area were adequate to illuminate the hazard.

Kane Real Estate Investments 2, LLC also notes that Barnes testified that she had no trouble seeing the condition of the driveway, including the 2-inch lip where it intersected with the sidewalk. Yet, Barnes also testified that she took a nighttime photograph of her driveway from the porch. She indicated that she could not see the lip from the porch, but acknowledged that she could see a "line" in the area. The photograph does, in fact, depict a dark line in the area where the driveway appears to intersect with the sidewalk. The exact nature of the line, however, is unclear. Moreover, Thomas opined that, based upon her experience taking photographs at night, the flash had been used when the photograph was taken. Accordingly, although this evidence would support a finding that the lip would be visible upon causal inspection in the dark, it does not directly refute Thomas's testimony that it was too dark to see the 2-inch lip before or after she stubbed her toe on it. Thus, as the evidence must be viewed in the light most favorable to Thomas, the non-moving party, there is a genuine question of material fact with regard to the visibility level of the allegedly hazardous condition. The trial court, therefore, erred by summarily dismissing Thomas's premises liability claim.

---

that Thomas stubbed her toe on in this case. However, neither case turned on the level of danger posed by the hazard. Moreover, given that the evidence in this case indicates that a ¾ inch rise in a sidewalk would pose a tripping hazard, the fact that there is a 2-inch vertical height differential between the driveway and the sidewalk allows for an inference that is a more significant variation is the pavement height than one would normally be expected to encounter.

Reversed and remanded for further proceedings. We do not retain jurisdiction. Thomas may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Brock A. Swartzle