# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID PEGOWSKI and KAREN PEGOWSKI,

Plaintiffs-Appellants,

v

COURTLAND VENTURES, L.L.C., CARLOS
RODRIGUEZ, and C & R LAWN SERVICE
AND SNOW PLOWING,

Defendants-Appellees.

UNPUBLISHED
April 5, 2016

No. 323881
Kent Circuit Court
LC No. 12-011285-NO

Before: BECKERING, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff David Pegowski slipped and fell on black ice in the parking lot adjacent to his office building. His lawsuit contends that the building's owner, defendant Courtland Ventures, L.L.C., negligently failed to maintain the parking lot, and that defendant C & R Lawn Service negligently pushed snow onto the sidewalk, forcing Pegowski to traverse the icy parking lot to get to his car. The circuit court granted both defendants' motions for summary disposition. We affirm.

I

During the 72 hours before Pegowski's fall, snow fell fairly steadily on the parking lot outside his office. Weather records document snowfall of 2.2 inches of snow on December 8, 2009, 2.2 inches on December 9, and 7.2 inches on December 10, the day Pegowski fell. The temperature ranged from 27 to 39 degrees that day.

On the day of the accident, Pegowski's coworker, Kelli Morris, asked their employer to advise Courtland Ventures that the parking lot needed to be salted, as it was "getting slippery." She recounted: "I slipped a couple times myself[.]" Morris noted that the parking lot "is on an angle" and that water dripped from an overhang of the building's roof and refroze on the ground.

Pegowski recalled that it was snowing heavily when he arrived at work on December 10, and that the parking lot did not appear to have been plowed. The sidewalk in front of the

-1-

building (referred to by the parties as a concrete "slab" or "apron") was neither salted nor shoveled. Pegowski managed to make it into the building unscathed.

During his work day, Pegowski became aware that the parking lot was being plowed. When he left the building at approximately 6:00 p.m., the lot was "pitch black" but appeared to have been well cleared of snow. He walked cautiously, taking "very small steps," because he knew that the lot could be slippery. Indeed, Pegowski specifically conceded awareness that the asphalt could harbor "black ice," which Pegowski defined as "[i]ce that you can't really see but you can feel." Despite his efforts to safely negotiate the parking lot, Pegowski slipped and fell on black ice. He described the location of his fall as follows:

> *Q*. And when you stepped out of the doorway you were under the overhang, correct?
>
> *A*. Correct.
>
> *Q*. Okay. And you - - when you slipped and fell you weren't under the overhang, correct?
>
> *A*. Correct.
>
> *Q*. Had you walked across the - - I'll call it the concrete ribbon and were on the asphalt when you fell?
>
> *A*. Correct.
>
> *Q*. Do you recall how many steps you took once you exited the door before you fell?
>
> *A*. Approximately eight to ten steps out onto the tarmac when my - - when I fell.
>
> *Q*. And do you recall how many feet out onto the asphalt you are when you fell?
>
> *A*. Fifteen feet.
>
> *Mr. Aycock*: Fifteen feet from the doorway?
>
> *A*. No. From the concrete [s]lab that's under the overhang.

After he fell, Pegowski managed to crawl back to the entrance of the building on his hands and knees. He telephoned his son, who drove Pegowski across the parking lot to Pegowski's vehicle.

Pegowski filed a complaint against Courtland alleging premises liability. The complaint averred that "a poorly maintained building and overhang and an improperly designed water drainage system" caused ice to accumulate in the parking lot where he fell, and that the area was unlit and unsalted. Courtland identified C & R as a nonparty at fault pursuant to MCR

2.112(K)(3), based on C & R's contractual duty to remove snow and ice from the walkways and parking lot of its building. Pegowski then amended his complaint, naming C & R as a party defendant.

Both Courtland and C & R moved for summary disposition under MCR 2.116(C)(10). Courtland contended that the black ice was open and obvious and that it had no notice of the dangerous condition before Pegowski fell. C & R asserted that it had no obligation to salt the parking lot, and that it owed a contractual duty to plow the lot running only to Courtland. The circuit court granted both motions, finding that Courtland had no notice of the ice and that C & R had not caused or created the hazard.

II

We review de novo a trial court's decision to grant summary disposition. *Coblentz v Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In evaluating a motion for summary disposition under this subsection, we consider affidavits, pleadings, depositions, admissions and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. *Coblentz*, 475 Mich at 567-568. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Coblentz*, 475 Mich at 568; MCR 2.116(C)(10); MCR 2.116(G)(4).

III

Despite that black ice is invisible and therefore not evident on casual inspection, our Supreme Court has decreed that "when there are 'indicia of a potentially hazardous condition' " such as "wintry conditions" replete with below freezing temperatures and falling snow, the environment "renders alleged 'black ice' conditions open and obvious." *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934; 782 NW2d 201 (2010), citing *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 483; 760 NW2d 287 (2008). Pegowski's slip and fall occurred in winter, with temperatures mostly below freezing, abundant snow present around Courtland's premises, and water dripping from an overhang directly onto the parking lot. "[T]hese wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection." *Id.* at 935. In other words, as a matter of law, the black ice in the parking lot that night was open and obvious. See also *Hoffner v Lanctoe*, 492 Mich 450, 464; 821 NW2d 88 (2012) ("[W]intry conditions, like any other condition on the premises, may be deemed open and obvious.").

Anticipating this legal conclusion, Pegowski urges us to find that fact questions exist regarding whether the black ice he encountered was "effectively unavoidable." Our Supreme Court has recognized a narrow exception to the open and obvious danger doctrine, generally termed "special aspects." "[L]iability may arise when *special aspects* of a condition make even an open and obvious risk unreasonable." *Hoffner*, 492 Mich at 461 (emphasis in original). A special aspect exists only when the risk created by a condition on the land qualifies as "unreasonable." *Id.* An "unreasonable" risk is one that poses "a uniquely high risk of severe harm." *Id.* at 462 (citation omitted). The Supreme Court has summarized: "liability may be

-3-

imposed only for an 'unusual' open and obvious condition that is 'unreasonably dangerous' because it 'present[s] an extremely high risk of severe harm to an invitee' in circumstances where there is 'no sensible reason for such an inordinate risk of severe harm to be presented.' " *Id*. (alteration in original, citation omitted).

An "effectively unavoidable" danger falls within the ambit of a "special aspect." *Id*. at 463. To be "effectively unavoidable," a condition must be "inescapable," or incapable of being avoided. *Id*. at 468. "[T]he standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id*. at 469 (emphasis in original). This Court has held that a plaintiff must be "effectively trapped" by the hazard. *Joyce v Rubin*, 249 Mich App 231, 242; 642 NW2d 360 (2002).

Pegowski admitted during his deposition that the sidewalk bordering the parking lot offered an alternative route to his car free of black ice. While we sympathize with Pegowski's plight that evening, we are bound to follow our Supreme Court's dictate that where there is a "choice" whether to confront a hazard, the hazard is not "unavoidable." Accordingly, we affirm the grant of summary disposition in favor of Courtland, albeit for reasons different than those stated by the circuit court.

IV

We turn our attention to defendant C & R. Pegowski acknowledges that he may not predicate C & R's liability on its alleged failure to salt the driveway. See *Fultz v Union-Commerce Assocs*, 470 Mich 460, 466; 683 NW2d 587 (2004). Instead, Pegowski argues that C & R breached a noncontractual duty of care by piling ice and snow onto the sidewalk, thereby forcing Pegowski to walk on the icy asphalt rather than the snowy sidewalk. "[W]hile the mere existence of a contractual promise does not ordinarily provide a basis for a duty of care to a third party in tort, the existence of a contract also does not extinguish duties of care otherwise existing." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 170; 809 NW2d 553 (2011) (citations and brackets omitted). When a defendant creates a "new hazard" that harms the plaintiff, he or she breaches the duty to act in a nonnegligent manner. *Fultz*, 470 Mich at 469.

We observe that Pegowski's claim that C & R dumped snow on the sidewalk outside his office entryway appears in an affidavit filed in response to C & R's motion for summary disposition. We agree with Pegowski that piling snow on the sidewalk could constitute negligence. However, during his deposition Pegowski admitted that "[s]now was not an issue" during his walk to his car. Further, Pegowski's affidavit fails to describe the location of the sidewalk snow, or the manner in which it inhibited his travel to his car. Nor has he offered any evidence that an alternate route involving the sidewalk would have allowed him to avoid the

-4-

black ice. Accordingly, Pegowski has not demonstrated that snow on the sidewalk proximately caused his fall. On this basis, summary disposition as to C & R was warranted.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly